**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**

**CIVIL ACTION NO. 2:21-CV-15 (WOB-CJS)**

**MMCPM LOGISTICS, LLC, ET AL.**                              **PLAINTIFFS**

**VS.**                    **MEMORANDUM OPINION AND ORDER**

**CLARITY RETAIL, LLC, ET AL.**                               **DEFENDANTS**

This matter is before the Court on two motions: first, a Motion for Leave to Amend Complaint filed by MMCPM Logistics, LLC, MMCPM, LLC, and Myron and Summer Miller (collectively "Movants"), (Doc. 67), and, second, the same Movants' Motion to Dismiss, (Doc. 68).

To avoid unnecessary length or duplication, the Court incorporates by reference the factual background described in its previous opinion and order in this case. (Doc. 33). Any other relevant background will be addressed in this Opinion and Order as necessary.

**A. Motion to Amend Complaint**

The first matter to resolve is Movants' Motion for Leave to Amend Complaint. (Doc. 67). The requested amendment would replace the original "Tortuous[sic] Interference with Contract" claim with two different claims: "Breach of Contract" and "Unjust

63223deefb3cccf5

Enrichment." The only real change in circumstance since the filing of the original complaint is that Movants obtained new counsel. Movants essentially argue that this change of circumstance justifies amendment. Clarity simply argues that this change of counsel is not sufficient justification.

Movants seek this amendment long past 21 days after service of the original complaint, the time a party may typically amend its complaint without leave of court, FRCP 15(a)(1)(A), and Clarity does not consent to the amendment. In general, however, the Court should freely grant leave "if justice so requires." FRCP 15(a)(2). The primary question, then, is whether justice compels the Court to grant Movants an opportunity to amend their complaint where the claims Movants would substitute are different than the one in the original complaint, there is technically one new claim, and where the only real change of circumstance since the original amendment is Movants' change of counsel.

Of course, Rule 15(a)(2) employs permissive language lending the Court broad discretion on whether to grant leave to amend a complaint. The basic policy underlying this federal rule is that "pleadings are not an end in themselves but are only a means to assist in the presentation of a case to enable it to be decided on the merits." 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1473 (3d ed.) (citing *Foman v. Davis*, 371 U.S. 178 (1962)).

> In the absence of [a good] reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Davis*, 371 U.S. at 182. Perhaps the most important factor to consider is the prejudicial effect leave would have on a non-movant like Clarity. *Church Joint Venture, L.P. v. Blasingame*, 947 F.3d 925, 934 (6th Cir. 2020).

Under these circumstances, the Court grants Movants leave to amend their complaint in the manner proposed. The Court previously set aside the default judgment it had entered against Movants, notwithstanding the performance of their former counsel, because it was better that the case proceed on the merits with new counsel. (Doc. 58).

The same general concern applies to this motion. It is not unfair and not unduly prejudicial to allow this amendment, which is really more of a clarification of Movants' existing claims. There is no genuine surprise or delay caused by this substitution.

Moreover, the parties have yet to truly proceed to the merits or substance of Movants' claims, and the amendment will have no real effect on Clarity's own claims, two of which are the very same as Movants': breach of contract and unjust enrichment. The two new claims pertain to the same subject matter: a common business dispute. Discovery closes in less than three months, but

apparently the parties have not yet commenced any meaningful discovery. Clarity fails to describe any other specific way in which it will be burdened, stalled, or distracted by these amended claims. Thus, Clarity cannot really say it was prejudiced or misdirected in its defensive strategy by Movants' amendment. Accordingly, the Court grants Movants' Motion for Leave to Amend as requested.

### B. Motion to Dismiss

In their Motion to Dismiss, Movants raise four reasons that either certain parties or certain claims should be dismissed. First, Movants argue Clarity, as an LLC, may not maintain any sort of action against them because it lacks a certificate of authority. Second, Movants argue Byron and Summer Miller cannot be held personally liable and should therefore be dismissed because they are members or agents of an LLC, MMCPM Logistics. Third, Movants argue Clarity cannot maintain its tort claims in the same action as it maintains its contract claims, warranting dismissal of its tort claims. Finally, Movants argue MMCPM, LLC cannot be held liable to Clarity at all because it was never party to the contract in question; rather, MMCPM *Logistics*, LLC was, and MMCPM, LLC is merely being conflated with MMCPM Logistics due to their similar names. Each basis for dismissal is without merit for the following reasons.

#### 1. Clarity Retail's Certificate of Authority

The first issue Movants raise is Clarity's capacity to sue via counterclaim and third-party complaint without a certificate of authority. As Movants correctly argue, a party's capacity to sue is determined first by reference to Fed. R. Civ. Proc. 17(b)(3). For an unincorporated business association like Clarity, the law of the state where the court is located determines the entity's capacity to sue. Clarity is an LLC, and the Court is located in Kentucky, so Kentucky law controls. *See* FRCP 17(b)(3)(A). Under Ky. Rev. Stat. (KRS) 14A.9-020(1), a foreign entity like Clarity, an LLC registered in Ohio, "may not maintain a proceeding in any court in th[e] Commonwealth until it obtains a certificate of authority." Thus, as a general matter, unless Clarity has obtained a certificate of authority, it may not "maintain" an action in a court in Kentucky, including this federal court.

In this suit, however, Clarity was sued first and was thereby rendered an initial defendant. It then asserted a compulsory counterclaim against the plaintiff (Movant) and raised its own third-party claim against three other parties. But when it was sued itself, can Clarity be said to have "maintained" a proceeding under KRS 14A.9-020(1) by virtue of its counterclaim and third-party claims? Clarity cites one unpublished Kentucky case in which the Kentucky Court of Appeals held compulsory counterclaims can be asserted by a party without a certificate of authority. *Mod.*

*Motors, LLC v. Yelder*, No. 2009-CA-000648-MR, 2010 WL 323305, at *4 (Ky. Ct. App. Jan. 29, 2010). Although the case is unpublished, Movants raise no authority to the contrary. Clarity's counterclaim, then, may be sustained though it had not obtained a certificate of authority at the time this motion to dismiss was filed.

Even if Clarity lacks the certificate of authority necessary to maintain either its counterclaim or its third-party claims, KRS 14A.9-020(3) expressly and specifically authorizes the Court to stay proceedings until Clarity obtains such a certificate. In fact, Clarity asks the Court to do just that. The Court opts to stay proceedings until Clarity obtains its certificate of authority, if it has not already, at which point it shall furnish a copy of the certificate to the Court.

### 2. Personal Liability of the Millers

Movants also assert that the Millers, third-party defendants Myron and Summer Miller, cannot be liable for any claims against them because they are members or agents of an LLC. Indeed, KRS 275.150(1) states:

> Except ... as otherwise specifically set forth in other sections in this chapter, no member, manager, employee, or agent of a limited liability company ... shall be personally liable by reason of being a member, manager, employee, or agent of the limited liability company, under a judgment, decree, or order of a court, agency, or tribunal of any type, or in any other manner, in this or any other state, or on any other basis, for a debt, obligation, or liability *of the limited liability company*, whether arising in contract, tort,

> or otherwise. The status of a person as a member, manager, employee, or agent of a limited liability company ... shall not subject the person to personal liability for the acts or omissions, including any negligence, wrongful act, or actionable misconduct, of any other member, manager, agent, or employee of the limited liability company. . ..

(emphasis added). Subsection (3) provides that the preceding language "shall not affect the liability of a member, manager, employee, or agent of a limited liability company *for his or her own* negligence, wrongful acts, or misconduct." (emphasis added).

As the two provisions quoted above state clearly, a member cannot be held to the debts or liabilities other members or agents may incur on behalf of the LLC; but if acts of the member himself incur a debt or liability, he may be liable *along with* the LLC depending on the circumstances and form of liability. This interpretation has been recognized by courts in the Sixth Circuit, and is bolstered by Kentucky Supreme Court precedent. *See 5ifth Element Creative, LLC v. Kirsch*, No. 5:10-CV-255-KKC, 2010 WL 5139235, at *2 (E.D. Ky. Dec. 9, 2010) (citing *Smith v. Isaacs*, 777 S.W.2d 912, 914 (Ky. 1989); *Conn v. Markwest Hydrocarbon, Inc.*, 2006 WL 782728, at *5 (E.D. Ky. Mar. 27, 2006)); *see also J. Stan Devs., LLC v. Lindo*, 2009 WL 3878084, at *3 (Ky. Ct. App. Nov. 20, 2009).

Clarity asserted against the Millers claims of fraud, conversion and replevin, tortious interference with business relations, and negligence. Noticeably absent against the Millers

is an assertion of breach of contract, a claim Clarity made only against the two LLC defendants.

In support of its motion, Movants cite *Barone v. Perkins*, No. 2007-CA-000838-MR, 2008 WL 2468792, (Ky. Ct. App. June 20, 2008), for the categorical proposition that members cannot be liable for their own actions if such actions are taken on behalf of the LLC. Indeed, the *Barone* panel appears to have so held. Even if it did, however, it conflicts with Kentucky Supreme Court precedent on the same issue to the extent it holds members of an LLC are not individually liable for torts they commit themselves.

In *Smith v. Isaacs*, the Kentucky Supreme Court made the distinction between a corporate shareholder's vicarious liability for the debts of a corporation, as might be incurred financially under a loan or other contract, and a shareholder's liability in "tort for misfeasance or nonfeasance, including liability for negligence." 777 S.W.2d 912, 913 (Ky. 1989) (citing Restatement (Second) of Agency § 343, *et seq*.). As to the latter causes of action, torts and misconduct, limited liability does not to extend either to shareholders of a corporation or to members of an LLC. Although *Smith* concerned a corporation and the limited liability of its shareholders, the limited liability conferred to corporate shareholders is analyzed just like limited liability conferred to members of an LLC. *Tavadia v. Mitchell*, 564 S.W.3d 322, 328 n. 5 (Ky. Ct. App. 2018). And of course, this holding is consistent

Kentucky's LLC limited-liability statute as well, which expressly carves out an exception to a member, manager, employee, or agent's limited liability "for his or her own negligence, wrongful acts, or misconduct." *See* KRS 275.150(3). This is so even if the Millers were then acting on behalf of an LLC or in their capacity as members or agents. *See Smith*, at 914.

Consistent with *Smith* and KRS 275.150(1) and (3), the Court regards the negligence, conversion, and fraud alleged against the Millers as the sort of "negligence, wrongful acts, or misconduct" addressed under KRS 275.150(3). So, despite being members or agents of at least one of the LLCs, the Millers may be liable for torts like negligence, fraudulent inducement, conversion, and tortious interference, at least to the extent it is later proven either of the Millers' individual actions render them so liable. Thus, the Millers are proper parties to the suit for their tort claims, which is all that Clarity has asserted against them.

### 3. Contract and Tort Claims under the Same Facts

The next issue Movants raise is whether Clarity can bring the just-discussed tort claims in the same case in which they allege a breach of contract. While not using the precise words, Movants more or less assert the "economic loss rule." This rule, well-established under Kentucky law, stands for the general principle that torts cannot be asserted to recover purely economic expectancies where such a loss was occasioned by a breach of

contract, the purpose of the rule being to define the nature of the duty purportedly breached and avoiding double recovery for the same act. *See Presnell Const. Managers, Inc. v. EH Const., LLC*, 134 S.W.3d 575, 585 (Ky. 2004) (Keller, J., concurring) (citing *Seely v. White Motor Co.*, 403 P.2d 145, 151 (Cal. 1965)); *Town of Alma v. AZCO Const., Inc.*, 10 P.3d 1256, 1262 (Colo. 2000) ("Determining when a contract action will lie and when a tort action will lie requires maintaining this distinction in the sources of the respective obligations.").

> The key to determining the availability of a contract or tort action lies in determining the source of the duty that forms the basis of the action.... [T]he question of whether the plaintiff may maintain an action in tort for purely economic loss turns on the determination of the source of the duty the plaintiff claims the defendant owed. A breach of duty which arises under the provisions of a contract between the parties must be addressed under contract, and a tort action will not lie. A breach of a duty arising independently of any contract duties between the parties, however, may support a tort action.

*Superior Steel, Inc. v. Ascent at Roebling's Bridge, LLC*, 540 S.W.3d 770, 792 (Ky. 2017) (quoting *Presnell*, at 585 (Keller, J., concurring)). Thus, the Court must identify the various sources of duties from which Clarity derives its claims and identify any preclusive overlap between them.

To reiterate, the tort claims here include negligence, fraudulent inducement (hereafter "fraud"), conversion and replevin (hereafter "conversion"), and tortious interference with business relations (hereafter "tortious interference"). Before analyzing

whether these torts allege the same operative factual bases and loss as the breach of contract claim, it is worth revisiting Clarity's own basis for alleging breach of contract.

In short, Clarity's breach of contract claim characterizes MMCPM Logistics's and MMCPM LLC's contractual duties as, "among other things, [t]o store and manage inventory and safely assemble, package and ship signage and other materials for Clarity's customers." (Doc. 1-6 ¶ 34). This is fundamentally a service contract. Clarity has described the alleged breach of contract as Movants' failure to provide the storage, packaging, and delivery services promised under the contract:

> MMCPM breached the agreements in multiple ways, including but not limited to shipping product that was damaged, due either to poor packaging or poor storage prior to packaging; missing deliveries; making incomplete deliveries; making late deliveries; failing to properly account for and manage inventory; failing to fulfill orders; and failing to provided[sic] financial and account information when requested.

(Doc. 1-6 at ¶ 37; *see also* Docs. 68-1, Dollar Tree Contract; 68-2, Combined Dollar Store Contract). With MMCPM's contractual duties and alleged breach, the Court can determine whether Clarity's tort claims are barred by the economic loss rule.

The fraudulent inducement claim is distinct from the breach of contract both factually and as a legal theory. *See Presnell*, 134 S.W.3d at 585 (Keller, J., concurring). While in general fraud also provides a remedy for purely economic loss like a breach of

contract claim, it is by its fundamental nature extra-contractual. *See id.* (citing *Town of Alma*, 10 P.3d at 1263). Put differently, separate from what was promised in the contract, the fraudulent verbal representations Movants allegedly made to Clarity were that they "would move to a new facility or build on their existing property to increase [their] capacity" so they could render the services to Clarity as promised by contract. (Doc. 1-6 at ¶ 40). Based on this representation, Clarity claims it was induced to contract in the first place, and that it reasonably relied on those statements to its detriment by entering into the contract at all, i.e., fraud in the inducement. That is a separate claim from breach of contract, with its own measure of damages and manner of proof. So, Clarity may maintain its claim for fraud.

Similarly, Clarity's conversion claim is not premised on contractual rights, and can thus be asserted in the same action. The elements of this tort are as follows:

    (1)    the plaintiff had legal title to the converted property;
    (2)    the plaintiff had possession of the property or the right to possess it at the time of the conversion;
    (3)    the defendant exercised dominion over the property in a manner which denied the plaintiff's rights to use and enjoy the property and which was to the defendant's own use and beneficial enjoyment;
    (4)    the defendant intended to interfere with the plaintiff's possession;
    (5)    the plaintiff made some demand for the property's return which the defendant refused;

    (6)    the defendant's act was the legal cause of the plaintiff's loss of the property; and
    (7)    the plaintiff suffered damage by the loss of the property.

*C&H Mfg., LLC v. Harlan County Indus. Dev. Auth., Inc.*, 600 S.W.3d 740, 745 (Ky. App. 2020). Clarity asserts that Movants wrongfully possessed property that was incidentally subject to the packing and delivery services promised by contract. The contract merely implied the transfer of possession in furtherance of the delivery, but Clarity did not derive its title to the property nor its right to possess or control from the contract. Further, the damages for this conversion claim arise from Clarity's loss of value in the personal property itself, and the damages are presumably measured by the value of that property at the time of conversion, not by the expected value of the services it contracted for its delivery. Thus, the conversion claim may also be asserted by Clarity.

    Assuming the elements of the claim are later proven, at least in the abstract, a tortious interference claim can coexist with a claim for breach of contract. "To establish tortious interference [under Kentucky law, the plaintiff] must show: '(1) the existence of a valid business relationship or expectancy; (2) that the defendant was aware of this relationship or expectancy; (3) that the defendant intentionally interfered; (4) that the motive behind the interference was improper; (5) causation; and (6) special damages.'" *Club Specialists Int'l, LLC v. Keeneland Ass'n, Inc.*,

No. 5:16-CV-345-KKC, 2018 WL 2050134, at *7 (E.D. Ky. May 2, 2018) (citing *Halle v. Banner Indus. of N.E., Inc.*, 453 S.W.3d 179, 187 (Ky. Ct. App. 2014)) (note also, this example of a district court allowing both a breach of contract claim and tortious interference claim to coexist in the same action). The tortious interference claim can be premised on facts entirely different from the breach of contract. As with the other tort claims, it is not barred per se by virtue of it being a tort.

As mentioned above, one of the main concerns here is preventing multiple recovery for a single economic loss. *AgTech Sci., LLC v. Blue Circle Dev., LLC*, No. 5:19-CV-00118-GFVT, 2020 WL 1975375, at *4 (E.D. Ky. Apr. 24, 2020) (citing *Gen. Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318, 333 (1980)). The Court is cognizant that Clarity's claims must not be conflated so as to improperly reap double damages from the same breach. But as Clarity has pled its case so far, it has asserted fundamentally different claims supported by different facts, and it should be afforded the opportunity to prove them in the same case, even if by alternative pleading. Thus, the Court declines Movants' invitation to dismiss any of Clarity's tort claims pursuant to the economic loss rule.

### 4. MMCPM Logistics, LLC and MMCPM, LLC

Movants' last basis for dismissal is that MMCPM, LLC was improperly joined as a party to this action despite having no

connection to the contracts in question, by contrast to MMCPM Logistics, LLC, which was party to the contracts. It does seem, at least implicitly, that Clarity regards the two entities as identical or at least jointly liable under the same claims because Clarity in its Counterclaim and Third-Party Complaint refers to MMCPM Logistics, LLC and MMCPM, LLC both collectively as just "MMCPM," asserting the same claims against both. (Doc. 1-6 at ¶¶ 5, 34). The question, then, is whether MMCPM, LLC is a proper party in this suit.

Indeed, signed in both contracts provided to the Court is "MMCPM Logistics, LLC," (Docs. 67-3; 67-4), not "MMCPM, LLC." Despite the similar name, MMCPM, LLC is apparently a separate entity. Clarity does not yet argue any specific theory of corporate identity connecting MMCPM, LLC to MMCPM Logistics in liability. Clarity's position is simply that it remains unclear which entity truly performed services for it, and that it should be allowed to prove MMCPM, LLC was also a party liable under its claims.

If a connection between the entities is not already sufficiently evident from the names, Clarity should at least be allowed to investigate a connection between MMCPM, LLC and MMCPM Logistics. This can be easily resolved later by summary judgment after Clarity has had an opportunity to discover any connection between the parties and to rebut the Movants' position that MMCPM,

LLC has no adequate connection to these claims. At the pleading stage, however, Clarity has adequately pled all its claims against MMCPM, LLC.

Moreover, while it is true MMCPM Logistics's name might be the only name on the contracts, the claims of fraud, conversion, and tortious interference are also made against MMCPM, LLC. Those claims, as explained above, may not necessarily depend on which entity signed the contracts in question as the breach of contract claim would. Thus, the Court declines to dismiss MMCPM, LLC as a party because, as Clarity pled, MMCPM, LLC may be liable in some manner that remains to be proven.

**THEREFORE**, the Court being advised, **IT IS ORDERED THAT**...

1. MMCPM Logistics, LLC's Motion for Leave to Amend Complaint, (Doc. 67), be, and is hereby, **GRANTED**, and Movants' tendered First Amended Complaint (Doc. 67-2) is deemed filed concurrently herewith;

2. MMCPM Logistics, LLC's Motion to Dismiss Counterclaim and Third-Party Complaint, (Doc. 68), be, and is hereby, **DENIED**; and

3. This action is **STAYED** until Clarity demonstrates it has obtained a certificate of authority satisfying KRS 14A.9020(1). By **April 15, 2022**, Clarity shall **FILE** a photocopy of such certificate of authority **or**, if Clarity has not yet obtained it, **FILE** a status report detailing

the progress of its application for a certificate and such certificate's reasonably anticipated receipt date.

This 8th day of April 2021.



Signed By:
William O. Bertelsman
United States District Judge